JAMES ROBERT DILWORTH

*v.*

STATE OF TENNESSEE.

JAMES DOTSON

*v.*

STATE OF TENNESSEE.

(*Nashville,* December Term, 1958.)

Opinion field March 12, 1959.

Thomas E. Fox, Assistant Attorney General, for plaintiff in error.

O. B. Hofstetter, Jr., D. L. Lansden and James C. Kirby, Jr., Nashville, for defendants in error.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The defendants in error were arrested for operating trucks with excessive weights upon Woodmont Boulevard in Davidson County, Tennessee, in violation of a Resolution of the Davidson County Quarterly Court adopted pursuant to Chapter 178 of the Public Acts of 1955. This Act is codified in the present Code of Tennessee and carried as Sections 59-1113, 59-1114, and 59-1115 to 59-1117, T.C.A. The warrants were dismissed by the trial judge and the State has appealed. Able briefs have been filed by both sides, arguments heard and we now have the matter for disposition.

The defendants in error moved in the trial court to dismiss the warrants upon several grounds. The trial judge sustained the motion to dismiss on the sole ground that the statute in question violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States and contravened and violated Article 11, Section 8, of the Constitution of Tennessee in that it was class legislation denying the defendants equal protection of the law.

The purpose of this Act as stated in its caption is "to protect the streets, roads and highways or other public thoroughfares in Tennessee, including the bridges on such highways from unnecessary injury or damage, etc." The first section of the Act (Section 59-1113, T.C.A.), among other things, authorizes the County Government, acting in conjunction with the County Highway Department, to prescribe the maximum gross weights of vehicles using County roads and provides that a violation of such regulations as propounded by the governing

authorities of the County is a misdemeanor and punishable by a fine.

Section 3 of the Act (Section 59-1115, T.C.A.) provides that this Act "shall have no application to passenger buses or common carriers by motor vehicle authorized by a certificate of convenience and necessity issued by the public service commission of the state of Tennessee or the interstate commerce commission to operate as common carriers," and that it shall not apply to the highways on the "state highway system, or to streets within the boundaries of incorporated municipalities." It is because of this section wherein these vehicles, there named, are excluded from the operation of the Act that the contention is made that the Act denies these defendants in error the equal protection of the law.

Pursuant to this Act the Davidson County Court by resolution imposed 10 ton gross weight limits upon Woodmont Boulevard and Bluefield Avenue. It was on Woodmont Boulevard that the violation of this resolution is charged to these defendants in error, that is, that they were operating on this County street with truck loads in excess of the gross weight limits allowed by the resolution on this County road or street.

Under the general law of the State (Section 59-1109, T.C.A.), common carriers are authorized to have a gross weight limit up to 55,980 pounds. Thus it is by the resolution of the County Court that operators of any other trucks other than common carriers, that is, those authorized by the Interstate Commerce Commission or the Public Service Commission, are limited to 20,000 pounds while those that are under the jurisdiction of the Interstate Commerce Commission or the Public Service Com-

mission are authorized to operate trucks carrying a gross weight of 55,980 pounds. The argument thus is that the effect of this resolution, which is adopted pursuant to the Statute here in question, is to prohibit private and contract motor carriers from using Woodmont Boulevard transporting loads in excess of 20,000 pounds while permitting common carriers to carry loads up to 55,980 pounds.

The parties stipulated certain facts to-wit: Woodmont Boulevard is a public road maintained by Davidson County and located just South of the City limits of Nashville. It is a paved lateral highway extending from Franklin Road westward across the Hillsboro Road to Harding Road for a distance of approximately four miles. In conjunction with Thompson Lane which extends from the Franklin Road eastward across the Nolensville Road to the Murfreesboro Road it is used substantially by common carriers, contract carriers and private carriers as a short cut to bypass downtown Nashville in traveling between the main route highways. It is also used substantially by private trucks for local and cross town movement of goods belonging to the owners of the truck operators. It is the only direct arterial thoroughfare providing access from the southeast to the southwest suburban areas adjacent to the City of Nashville.

The defendants in error when arrested, and the charge in the warrant under which this arrest herein is made, is that they were operating the truck with a gross weight of 23,600 pounds and were hauling for a local crushed stone company which is located on Robertson Road on the west side of Nashville. It is likewise stipulated that

this route was regularly used by this company for the delivery of their stone to purchasers at construction sites on the southern and southeastern sides of Nashville.

Thus it is that we have the obvious contention of the respective parties. As here presented both parties have set forth their contentions in an exceptionally plausible manner.

The State, of course, contends that the Legislature in enacting this Act has a very broad discretion in classification in the exercise of its power of regulation; that if possible and reason can be found to conceivably justify this classification the statute should be upheld and that there where the validity of the Statute is challenged as to its constitutionality the attacker must show facts and details sufficiently to justify its contention. It is contended that making the classification here of exempting those regulated by the Interstate Commerce and Public Service Commissions of this State from the obligations of this Statute that the Legislature was justified because of the type of services rendered by the motor vehicles operated under either of these boards. It is said that buses and common carriers being subject to the regulations of these commissions and that since privately owned buses or trucks and contract carriers are not so regulated that this makes a valid distinction which would allow the exception made in the statute. The argument is that the traveling and shipping public's welfare, safety, and convenience demand that these common carriers and those regulated by these commissions must operate upon schedule and over planned routes with fixed points, etc., and that private carriers do not have to thus operate

and consequently this is a reasonable and just distinction.

The argument is further made that these commissions, that is, the Interstate Commerce Commission and the State Public Service and Utilities Commission regulate the category exempt here while the County Court under this Act regulates the private carriers. Argument further is that those carriers here exempt from this Statute have been required by the Commissions regulating them to adopt certain safety regulations which are different from those imposed upon contract carriers or private persons may pay a different rate of tax and are required to run on schedule and thus this exemption to them herein is within the power and broad discretion of the Legislature in exempting them under the Act here in question.

The State bottoms its case on an opinion of the Supreme Court of the United States of *Sproles v. Binford,* 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167, and like cases. Cases are likewise cited and relied upon by the State wherein it has been held, probably without exception, that passenger buses are a reasonable exception to a statute of the kind and support an exception in the statute and do not make the statute contrary to the Fourteenth Amendment of the Constitution or to Article 11, Section 8, of our Constitution, in that when they are exempt this is not a denial of the use of the highways to one class of citizen as opposed to another. The reason for this not being a denial of equal rights is set forth in the following excerpt from *Sproles v. Binford, supra,* to-wit:

"We do not think that it can be said that persons and property, even with respect to their transportation for

hire, must be treated as falling within the same category for purposes of highway regulation. The peculiar importance to the state of conveniences for the transportation of persons in order to provide its communities with resources both of employment and of recreation, the special dependence of varied social and educational interests upon freedom of intercourse through safe and accessible facilities for such transportation, are sufficient to support a classification of passenger traffic as distinct from freight." 286 U.S. at page 396, 52 S.Ct. at page 588, 76 L.Ed. at page 1183.

The Binford case likewise held that it was a proper exception and was not discriminatory when "implements of husbandry" were exempt since the finding of the Texas Court on this question that this covered only farm machinery and not trucks used as an incident to the farming business. In view of this finding as to what implements of husbandry meant the Supreme Court said:

"We think that the exception, in the light of the context and of its apparent purpose, instead of being arbitrary relieves the limitation of an application which otherwise might itself be considered to be unreasonable with respect to the exceptional movements described."

The Supreme Court of the United States in the Binford case took up each of the exceptions in the Texas Act, Vernon's Ann. P.C. art. 827a. The Court said:

"It is not a case of an arbitrary discrimination between the products carrier, as in the case of *Smith v. Cahoon,* 283 U.S. 553, 567, 51 S.Ct. 582, 75 L.Ed. 1264, (1274)."

■ Thus it is that we come to the contention of the defendants in error. In the first place they bottom their contention on the case cited last above of *Smith v. Cahoon, supra. Sproles v. Binford, supra,* and *Smith v. Cahoon, supra,* were prepared for the Court by Mr. Chief Justice Hughes. There is no conflict in these cases. The principle of law that bottoms all cases of the kind is the same, and as has been so well said:

"There is no general rule by which to distinguish reasonable and lawful from unreasonable and arbitrary classification, the question being a practical one, dependent on experience, and varying with the facts in each case." 16A C.J.S. Constitutional Law sec. 489, page 242.

■ It has long been universally established that the use of the highways for private purposes is their primary and preferred use and their use for transportation for hire, as by a common carrier, is a privilege which the State may deny, condition or regulate as it chooses. *City of Chattanooga v. Fanburg,* 196 Tenn. 226, 265 S.W.2d 15, 42 A.L.R.2d 1200.

Even the classification among carriers for hire with respect to the use of the highways when such classifications have not been fair to all carriers alike have been invalidated when this classification bore no reasonable relation to the objects of the legislation. *Smith v. Cahoon, supra.* Thus it is that the defendants in error argue that the purpose of the Statute here involved is a legitimate one, the protection of the highways and bridges from damages caused by excessive weights, etc., but they argue that the classification of releasing and relieving the common carriers herein bears no reasonable relation to this purpose. They say, which is true,

that the weight of the common carriers' trucks obviously is just as injurious to the highways as the weight of the private operators' trucks.

Those holding certificates of convenience and necessity from the I. C. C. and the Public Service Commission make the public highway their place of business and profit from the sale of the highway transportation. In the Act in question they are preferred over the private owned operator or the contract carrier not regulated by one of these Commissions. Thus it is that the argument is made on behalf of the defendants in error that this Act becomes arbitrary and unreasonable and that it grants the one class of people using the highway a weight load of 55,980 pounds while it limits private individuals and businesses to only 20,000 pounds in transporting their goods. It is argued that there is a lack of any basis for such a discrimination, especially since the State Commissioner of Highways may vary maximum weight limits on secondary roads and lateral highways under Section 59-1111, T.C.A., and that this Statute authorizing the Commissioner to thus vary the loads contains no exception favoring common carriers.

The classification here is clearly a classification between private and common carriers and discriminates between these classes of vehicles which are used for the transportation of freight. The purpose of the law is to protect the roads and bridges from excessive weights. To us it seems clear that there is no reasonable exception made when common carriers of freight are permitted to carry a load much heavier than private or contract carriers who are not regulated by one of the Commissions.

In *Smith v. Cahoon, supra* (51 S.Ct. 587), the Supreme Court of the United States was unable to find any justification for a discrimination there between carriers in the same business, that is, between "those who carry for hire farm products, or milk or butter, or fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities." In that case the Supreme Court of the United States reversed the Supreme Court of Florida, 99 Fla. 1174, 128 So. 632. The Florida Court based its opinion on the fact that this exception of transporting dairy products, etc., "have a reasonable basis for just distinctions, and do not make the statute operate arbitrarily upon some and not upon others under practically similar conditions." 128 So. 632, 633.

In view of our conclusion hereinabove expressed it is not necessary for us to take up and analyze each of the various cases cited by the respective parties because as said above these cases are all bottomed on the same legal proposition but with factual variations. Thus it is for the reasons herein expressed we concur with the trial court that this Act or Statute is unconstitutional because of the obvious discrimination between common carriers of freight and private carriers. The judgment below will be affirmed with costs.