Sam S. STALCUP, Individually and on
behalf of others, similarly
situated, Appellant,

v.

CITY OF GATLINBURG and David
Beeler, Appellees.

Supreme Court of Tennessee.

Dec. 29, 1978.

**440**

Stone & Hinds, Knoxville, for appellant.

W. W. Kennerly, Knoxville, Ronald E. Sharp, Sevierville, for appellees.

## OPINION

### PER CURIAM.

From our consideration of the record and briefs of the parties, we have concluded that the Court of Appeals correctly decided the issues presented on appeal. Accordingly, the judgment of the Court of Appeals is affirmed.

The opinion of the Court of Appeals will be for publication as an appendix to this opinion. Mr. Justice Brock dissents and files a separate opinion in which Mr. Chief Justice Henry joins.

## APPENDIX

### MATHERNE, Judge.

The issue on appeal is the validity of Ordinance No. 190 of the City of Gatlinburg, as amended, which levies a privilege tax of 1% upon the Gross Receipts of all businesses conducted within the city.

The ordinances were enacted under the authority of Chapter 328, Private Acts 1955, which authorized only the City of Gatlinburg to levy the tax. Thereafter, the legislature enacted a general law, Chapter 387, Public Acts 1971 (T.C.A. § 67–5801, et seq.), known as the Business Tax Act. That statute levied a state tax in varying amounts, according to classification, equal to named fractional parts of 1% of gross receipts of businesses, the operation of which was therein declared to be a privilege. This general statute also authorized counties and municipalities to levy a similar tax on all such businesses "in an amount not to exceed the rate hereinafter fixed and provided." T.C.A. § 67–5802.

The City of Gatlinburg has levied the privlige tax as allowed by the general statute and has also continued to levy the privilege tax of 1% on gross receipts as allowed by its ordinances.

Having paid under protest the tax levied under the municipal ordinances for the month of July 1976 the plaintiff filed this lawsuit to have the tax declared invalid and to recover on behalf of himself and others similarly situated all taxes illegally collected under the ordinances.

The trial judge sustained the defendants' motion for summary judgment and dismissed the plaintiff's lawsuit. The plaintiff appeals on the following grounds: (1) the trial judge erred in holding that Chapter 328, Private Acts 1955, did not constitute impermissible double taxation; (2) the trial judge erred in holding that Chapter 328, Private Acts 1955 was a reasonable classification as applied to Gatlinburg and was, therefore, constitutionally permissible; (3) the trial judge erred in failing to have a hearing on the motion for summary judgment prior to his decision thereon; and (4) the trial judge erred in failing to decide whether this lawsuit could be maintained as a class action.

## I.

■ The plaintiff insists that summary judgment was entered against him without a hearing. On December 21, 1976, the defendants filed a motion for summary judgment accompanied by the affidavit of the City Manager. On January 19, 1977, the defendants answered certain interrogatories filed by the plaintiff. On February 10, 1977, the trial judge entered a memorandum opinion in which he granted the motion for summary judgment and dismissed this lawsuit. Judgment was entered on February 15, 1977. In the meantime, on January 31, 1977, the plaintiff had taken the discovery depositions of Richard Barton, City Manager, and David Beeler, City Finance Director. These depositions were filed on March 3, 1977, at which time the plaintiff filed a motion for the trial court to reconsider his opinion of February 10, 1977, and to amend his judgment accordingly. Attached to this motion was the affidavit of R. Thomas Stinnett. On March 4, 1977, a supplementary affidavit of Richard Barton and the affidavit of David Beeler were filed by the defendants.

The motion to reconsider was heard by the trial judge on March 4, 1977, upon all the foregoing documents and argument of counsel. The trial judge affirmed his decision on February 10, 1977, and denied the motion to amend the judgment.

Whatever error as may have existed by the entry of the judgment on February 15, 1977, was corrected by the hearing held on March 4, 1977. At that hearing the affidavits, answers to interrogatories, depositions and oral argument of the plaintiff were fully presented and considered by the trial court. Based upon that hearing the trial judge affirmed his grant of summary judgment.

## II.

■ The plaintiff argues that the Gatlinburg Gross Receipts Tax is inconsistent with the Business Tax Act and, therefore, it is violative of Article 11, Section 8, Constitution of Tennessee. If a private act contravenes or is inconsistent with the general law on the subject, it is invalid only if no reasonable basis for the special classification can be found. *Brentwood Liquors Corp. of Williamson County v. Fox* (Tenn. 1973) 496 S.W.2d 454; *Blackwell v. Miller* (Tenn.1973) 493 S.W.2d 88.

■ The plaintiff relies heavily upon the *Brentwood* case. There a private act was passed in 1957 which authorized Williamson County to levy and collect a privilege tax of one-half of one per cent of the sales of retail liquor dealers in that county. The Court found that the private act was inconsistent with the Business Tax Act and declared the private act invalid, holding that "we [can] conceive of any reasonable basis why a particular business in Williamson County should be subject to a different and higher tax than are similar businesses in all the counties of the State."

We agree with the plaintiff that the *Brentwood* decision controls the case at bar on the issue that the private act which authorized the Gatlinburg Gross Receipts Tax is inconsistent with the Business Tax

Act because it imposes on the businesses of that city a "different and higher" tax.

It remains for determination, however, whether a reasonable basis for the special classification, which was lacking in *Brentwood*, can be found under the facts of this case. The legislature did not state in the 1955 private act any reason why the privilege of doing business in Gatlinburg should be taxed differently than that in other cities of the state. It is not necessary that the reasons for the classification appear in the face of the legislation. *State ex rel. Melton v. Nolan* (1930) 161 Tenn. 293, 30 S.W.2d 601. If any possible reason can be conceived to justify the classification, it will be upheld and deemed reasonable. *Knoxtenn Theatres v. McCanless* (1941) 177 Tenn. 497, 151 S.W.2d 164. So long as the statute applies equally and consistently to all persons who are or may come into the like situation or circumstance, it is not objectionable as being based upon an unreasonable classification. *Stratton v. Morris* (1890) 89 Tenn. 497, 15 S.W. 87. There is no general rule by which to distinguish a reasonable from an unreasonable classification, the question being a practical one varying with the facts in each case. *Dilworth v. State* (1959) 204 Tenn. 522, 322 S.W.2d 219. Where the reasonableness of the classification is fairly debatable the courts will uphold the classification. *Phillips v. State* (1957) 202 Tenn. 402, 304 S.W.2d 614. The burden of showing that the classification does not rest upon a reasonable basis is upon the party attacking the statute. *Estrin v. Moss* (1968) 221 Tenn. 657, 430 S.W.2d 345.

The record reveals that the City of Gatlinburg, due to its proximity to the Great Smoky Mountains National Park, has a tourist-oriented economic base. The proof is that more than 50% of the assessed valuation of property in the City of Gatlinburg for the year 1976 consisted of hotels, motels and tourist court accommodations. On the basis of accommodations for tourists, Gatlinburg ranks as the ninth largest city in the nation. With a population of approximately 2900 people, Gatlinburg re-

ceives an estimated three million visitors each year. We can appreciate the statement of the City Manager that this situation creates a greater service burden on the city than is normal for cities in Tennessee. It is stipulated that the Gross Receipts Tax brings in about $800,000 per year. To obtain this amount of revenue from property taxes the rate per $100 assessed valuation would have to be increased from the present 85 cents to about $3.14. Gatlinburg does not impose a sales tax, but Sevier County does impose that tax.

It is reasonable that the City of Gatlinburg, due to its unique characteristics as herein noted, be authorized to impose a "different and higher" tax on those who exercise the privilege of doing business in that city. The tax is equally applicable to all persons who fall within the class, namely, those who operate businesses within the city. The demand for tax dollars for water, sewerage, roads and streets is caused in the main by the great influx of tourists into the city; the tax imposes the burden upon those who exercise the privilege of doing business with the tourists. Therefore, there is a direct, natural and acceptable relation between the classification made and the objective of the enactment.

We hold that Chapter 328, Private Acts 1955, authorizing the Gatlinburg Gross Receipts Tax rests upon a reasonable basis, and it does not violate Article 11, Section 8, Constitution of Tennessee.

### III.

The plaintiff further argues that the levy and collection of both the local tax and the general tax constitutes impermissible double taxation in violation of Article 2, Section 28, Constitution of Tennessee.

The plaintiff insists that the Business Tax Act contains conflicting language wherein at Section 67–5801 the act states that "the taxes imposed by this chapter shall be in addition to all other privilege taxes," while Section 67–5802 authorizes counties and municipalities to levy a similar privilege tax upon businesses operating

within their boundaries "in amounts not to exceed the rates hereinafter fixed. . ." The plaintiff argues that a city or county can not levy a privilege tax under the Business Tax Act and also under some other act where the combined rate of the levy under both acts exceeds the rate allowed under the Business Tax Act.

We can not agree with that insistence. In construing statutes the words must be given their natural effect and import. We conclude that the clear meaning of the language of Sections 67–5801 and 5802 is that a city or county may levy a privilege tax under the Business Tax Act not in excess or the rates therein established, and a tax so levied shall be in addition to all other constitutionally permissible privilege taxes levied by that city or county under any other act.

It is established that double taxation within itself is not prohibited by the Constitution of Tennessee where it is plain that the legislature intended that result. *E. & L. Transport Company v. Ellington* (1963) 212 Tenn. 671, 371 S.W.2d 456; *Williams v. Massachusetts Mutual Life Ins. Co.* (1968) 221 Tenn. 508, 427 S.W.2d 845.

We conclude that the legislature clearly stated that the privilege tax authorized under the Business Tax Act "shall be in addition to all other privilege taxes," and thereby expressed its intent to allow double taxation by those counties and municipalities which elected to tax under the Business Tax Act and under other constitutionally permissible acts. We hold that the City of Gatlinburg is, under the facts, enforcing permissible double taxation on the privilege of doing business in that city.

We will not consider the question of whether a lawsuit to recover taxes that were allegedly illegally collected may be maintained as a class action. That issue is moot in this lawsuit.

The judgment of the trial court is affirmed. The plaintiff-appellant is taxed with the cost in this Court for which execution may issue if necessary.

NEARN, J., and TATUM, Special Judge, concur.

BROCK, Justice, dissenting.

I respectfully dissent from the opinion and decision of the majority upon two grounds.

First, in my opinion, Chapter 387 of the Public Acts of 1971, the Business Tax Act, repealed by implication Chapter 328 of the Private Acts of 1955 upon the authority of which the 1% Gatlinburg gross receipts tax is based. Both taxes are levied upon gross receipts from sales by retail businesses, so that, the private act is inconsistent with the later general act which provides that municipalities of the State ". . . may levy a privilege tax in an amount not to exceed the rates hereinafter fixed and provided." If Gatlinburg is allowed to levy the 1% gross receipts tax, which was authorized under the private act prior to the enactment of the general statute, it obviously is levying a privilege tax in an amount which does exceed the rates authorized by the general statute. In my view, this is a classic case of an implied repeal of a private act by a later general act covering the same subject. *Trotter v. City of Maryville*, 191 Tenn. 510, 235 S.W.2d 13 (1950).

I am of the further opinion that since the enactment of the 1971 public act the private act of 1955 is in violation of Article XI, Section 8, of the Constitution of Tennessee, as construed and applied in the recent decision of this Court in *Brentwood Liquors Corporation of Williamson County v. Fox*, Tenn., 496 S.W.2d 454 (1973). It was held in *Brentwood* that an earlier private act, enacted in 1957, which authorized Williamson County to levy and collect a privilege tax on retail liquor dealers of the county was in conflict with the same general statute here involved, Chapter 387 of the Public Acts of 1971, the Business Tax Act, and thus violated the provisions of Article XI, Section 8, of the Constitution of Tennessee, even though the private act be considered to affect Williamson County in its "governmental" capacity, as opposed to a private act which primarily affects the individual citizens of a county in their "private" capac-

ity. In an opinion by Chief Justice Dyer, the Court reviewed the pertinent decisions of this Court respecting the issue whether Article XI, Section 8, applies to special legislation which affects counties and municipalities in their "governmental" capacity only and concluded:

"We hold Article 11, Section 8 of the Constitution of Tennessee is applicable to private or special legislation affecting a county or municipality in the exercise of its governmental function, and where such legislation operates to suspend the general law on the same subject, the validity of such legislation is determined upon the issue of whether there is a reasonable basis for the discrimination.

"Chapter 276 of the Private Acts of 1957 recites no reasonable basis, nor can we conceive of any reasonable basis why a particular business in Williamson County should be subject to a different and higher tax than are similar businesses in all of the counties in the State." *Brentwood Liquors Corporation of Williamson County v. Fox*, 496 S.W.2d at 457.

Applying the decision in the *Brentwood* case to the case at bar, I reach the same result reached by the Court in *Brentwood*. The Court of Appeals in the instant case agrees that *Brentwood* is controlling and that the Gatlinburg gross receipts tax authorized by the 1955 private act is inconsistent with the Business Tax Act, Chapter 387 of the Public Acts of 1971. Thus, the Court of Appeals states in its opinion that:

"We agree with the plaintiff that the *Brentwood* decision controls the case at bar on the issue that the private act which authorized the Gatlinburg gross receipts tax is inconsistent with the Business Tax Act because it imposes on the businesses of that city a 'different and higher' tax."

However, the Court of Appeals upheld the validity of the private act upon the ground that the dominant business activity in Gatlinburg is that of tourist attractions and resort facilities and that this constituted "a reasonable basis for the discrimination."

The private act itself does not recite any "reasonable basis for the discrimination" and, indeed, none was required at the time of its enactment because the Business Tax Act had not then been enacted. Moreover, I am aware of no fact which may be considered a reasonable basis for this discrimination in favor of the City of Gatlinburg. There is no evidence whatever that those means of taxation, to which all other cities in the state are restricted, are inadequate to furnish needed revenues to Gatlinburg. Instead, the record shows that the property tax rate per $100 assessed valuation is only $0.85 in Gatlinburg, a rate which certainly would be the envy of the great majority of other municipalities in this state. Moreover, Gatlinburg does not even impose a sales tax although the vast majority of Tennessee municipalities find it necessary to impose such a tax.

Accordingly, I would reverse the judgment of the Court of Appeals and that of the trial court and hold that Chapter 328 of the Private Acts of 1955 is invalid and that the ordinance enacted pursuant thereto is likewise of no effect.