389 P.2d 57

**WYCOFF COMPANY, Incorporated,
Plaintiff and Respondent,**

v.

**PUBLIC SERVICE COMMISSION of Utah,
Hal S. Bennett, et al., its Commissioners,
Defendants and Appellants,**

**Utah Motor Transport Association,
Amicus Curiae.**

**No. 9915.**

Supreme Court of Utah.

Feb. 5, 1964.

A. Pratt Kesler, Atty. Gen., H. Wright Volker, Keith E. Sohm, Asst. Attys. Gen., Salt Lake City, for defendants and appellants.

Wayne C. Durham, Salt Lake City, for plaintiff and respondent.

Richards, Bird & Hart, Salt Lake City, for amicus curiae.

CALLISTER, Justice:

In an action for declaratory judgment the lower court held unconstitutional the Utah Motor Carrier Act.[1] That court held that the exemptions provided in the Act were discriminatory to those motor carriers, not exempt, and denied them the equal protection of the laws guaranteed by Amendment XIV of the U. S. Constitution[2] and

---

1. Ch. 6, Title 54, U.C.A.1953.

2. " * * * nor shall any state * * * deny to any person within its jurisdiction the equal protection of the laws."

Article I, Section 7 of the Utah State Constitution.[3] From this judgment the Utah Public Service Commission appeals.

The Commission upon this appeal makes the contentions that the respondent (hereinafter referred to as Wycoff), being a licensed carrier, is estopped to challenge the constitutionality of the act in question, having been the recipient of its benefits, and that it is not in a position to question the validity of the Act because it has not been harmfully affected by its terms. With these contentions we do not concern ourselves because the disposition of the case upon other and more fundamental grounds renders them moot.

The Motor Carrier Act provides that it is a misdemeanor to violate any of its provisions and further provides for fines and other penalties to be imposed upon a violator.[4] Because of certain violations of the Act, the Commission imposed a fine upon Wycoff, a licensed common carrier, which action was upheld by this court.[5] Subsequently, the Commission commenced proceedings in the District Court of Salt Lake County to collect the fine. This matter is still pending, awaiting the outcome of this declaratory judgment action.

In the instant case, the lower court held that the exemption provisions of 54–6–12, U.C.A.1953,[6] as amended, were discrimina-

3. "No person shall be deprived of life, liberty or property, without due process of law."
4. 54–7–25, 54–7–26, 54–7–27 and 54–7–28, U.C.A.1953.
5. Wycoff Co. v. Public Service Commission, 13 Utah 2d 123, 369 P.2d 283 (1962). The constitutionality of the Act was not an issue.
6. "Exceptions from provisions of act— Public liability and property damage policies—Rules and regulations—Supervision of carriers excepted.—Except for the provisions of 54–6–17 relative to requirements of insurance, 54–6–21, relative to safety regulations, and 54–6–22 relative to accident report no portion of this act shall apply:
   "(a) To motor vehicles when engaged exclusively in transporting students or their instructors to or from school or to or from school activities, the word 'school' to be construed to mean a place or structure in which the annual winter or summer elementary, collegiate, university or religious instruction is carried on; or
   "(b) To motor vehicles when used exclusively in carrying the United States mail under contract with the federal government; or
   "(c) To motor vehicles when the cargo consists exclusively of livestock, farm, orchard, or dairy products which are being transported between farm, orchard or dairy and a market, warehouse, creamery or processing plant; or exclusively of farm or dairy supplies used in or about the farm or dairy; or exclusively of coal, lumber or logs which are being transported from mine or forest to shipping point or market; or
   "(d) To motor vehicles when owned or operated by any duly organized agriculture co-operative association and used exclusively in the carrying on of its legally authorized nonprofit activities; or
   "(e) To motor vehicles used exclusively in the distribution of newspapers from the publisher to subscribers or distributors; or
   "(f) To motor vehicles when especially constructed for towing, wrecking, maintenance, or repair purposes, and not otherwise used in transporting goods and merchandise for compensation; or when constructed as armored cars and used

tory and rendered the whole Act unconstitutional and void. If the lower court were right, the imposition of the fine would also be void.

In support of the lower court's decision, Wycoff relies principally on Smith v. Cahoon.[7] In that case a private motor carrier was arrested for failure to obtain a certificate of convenience and necessity and pay a mileage tax as required by a Florida statute[8] which applied to "all transportation companies" without making any distinction between common carriers and private or contract carriers. The Florida Supreme Court upheld the constitutionality of the statute, holding that its

for the safe conveyance or delivery of money or other valuables, or when used as hearses, ambulances, or licensed taxicabs, operating within a fifteen mile radius of the limits of any city or town; or to motor vehicles used as ambulances or hearses by any person, firm or corporation duly licensed in the state as an embalmer, funeral director, or as a mortuary establishment, provided that use of such motor vehicles as an ambulance shall be incidental to the use of embalming or funeral directing.

"(g) To a group of employees riding together in the automobile of a fellow employee to and from their employment and sharing the actual expenses of the transportation; provided that said group of employees shall not exceed five persons, in addition to the driver of the vehicle, and in no event to exceed three persons in any one seat, and provided further that this subsection shall not apply to any individual so operating in excess of one motor vehicle.

"It shall be unlawful for any vehicle which is operated under any of said exempt classes to be operated upon the public highways of this state, for hire, without a public liability policy in an amount not less than $20,000 for personal injuries to or death of one person, or less than $40,000 for injuries to or death of more than one person; and for damage to property of any person other than the assured in an amount not less than $10,-000 for liability arising out of the operation of said vehicle for hire; without maintaining said vehicle and all parts thereof in a safe condition at all times and without reporting every accident arising from or in connection with the operation of such vehicle as required by law or to be operated for any uses or purposes not falling within said exempt classes, except in accordance with the provisions of this act.

"The commission shall have power and authority to prescribe such reasonable rules and regulations to carry out the purposes of this act as may be deemed necessary including the establishing of reasonable fees for registration and each annual renewal thereof of exempt carriers and for the services performed by the commission.

"The commission is vested with power and authority and it shall be its duty to supervise and regulate all motor carriers as excepted above in accordance with these rules and regulations and with the provisions of this section and all carriers now operating under the provisions of this section shall make application to register their operation with the public service commission on or before July 1, 1957, and thereafter each carrier commencing operations under this section shall apply for registration as provided herein within thirty days immediately after said operation.

"A violation of this section or of the rules established pursuant thereto shall constitute an unlawful act and shall be punishable in the same manner and to the same extent as provided for in this act for nonexempt carriers."

7. 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264 (1931).

8. Laws of Florida, 1929, Ch. 13700.

provisions which were "legally applicable" only to common carriers, were not applicable to private carriers. It did not attempt to designate which these were other than to say that a private carrier must procure the certificate and pay the tax.[9] Upon appeal the United States Supreme Court reversed, holding that since no line of severance of provisions was indicated on its face, the statute applied in toto to all within its scope and that it is beyond the power of a state by legislative fiat to convert a private carrier into a common carrier. Thus, the "due process" clause of the Fourteenth Amendment to the United States Constitution was violated.

The foregoing constitutional objections are not involved in the instant case. However, in Smith v. Cahoon, the Supreme Court also held that the exemptions contained in the Florida statute were discriminatory and violative of the "equal protection" clause of the Fourteenth Amendment to the Constitution of the United States. The Florida statute exempted from *all* its provisions auto transportation companies engaged exclusively in the transportation of argicultural, horticultural, dairy, farm products, etc. One of the statutory provisions from which they were exempt was that requiring an auto transportation company to furnish a bond or insurance policy to afford security for the public against injuries as well as for the protection of persons and property transported.

The Supreme Court recognized the principle that a state has broad discretion in classification in the exercise of its power of regulation, but stated:

"In the present instance, the regulation as to the giving of a bond or insurance policy to protect the public generally, in order to be sustained, must be deemed to relate to the public safety. * * * So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary, and constituted a violation of appellant's constitutional right. * * * "[10]

The possibility of a like discrimination in the Utah Motor Carrier Act was removed by the legislature in 1957 when it adopted an amendment to 54–6–12, U.C.A. 1953[11] requiring the enumerated exempt carriers to provide insurance, comply with

9. Cahoon v. Smith, 99 Fla. 1174, 128 So. 632 (1930).

10. 283 U.S. 553, 567, 51 S.Ct. 582, 587, 75 L.Ed. 1264.
11. Laws of Utah 1957, Ch. 107.

safety regulations, and to comply with the provisions relative to accident reports.[12]

We have given careful consideration to classes of transportation exempted under 54-6-12 and conclude that in each instance the classification is reasonable. For the most part, the transportation exempted is casual, seasonal, slow-moving, not on regular routes or schedules, frequently in special equipment, and for comparatively short distances. Each of the exemptions have been held reasonable by other courts.[13]

Reversed. No costs awarded.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

12. Prior to this amendment, the District Court for Salt Lake County in 1953 had held the Motor Carrier Act unconstitutional (Newman v. Public Service Commission, Civil No. 92815). The appeal to this court was dismissed upon application of the Commission.

